IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

GARY LYNN ARCHER,

           Plaintiff,

Vs.                                                    No. 13-4098-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Gary Lynn Archer's ("Archer") Title II application for disability insurance benefits and Title XVI application for supplemental security income under the Social Security Act ("Act"). He filed his applications in August of 2010, alleging a disability beginning September 9, 2008. After both applications were denied initially and on reconsideration, Archer requested an administrative hearing that was held on June 1, 2012. (Dk. 3-1, Transcript "Tr." at 31-59). On July 12, 2012, the administrative law judge ("ALJ") issued his decision finding that Archer was not disabled as he remains capable of performing his past relevant work as a data entry clerk. (Tr. 17-29). With the Appeals Council's denial of the claimant's request for review, the ALJ's 2012 decision stands as the Commissioner's final decision. (Tr. 1). The administrative record (Dk. 3-1) and the parties' briefs are on file pursuant to D. Kan. Rule 83.7.1 (Dks. 6, 11 and

14), the case is ripe for review and decision.

Born in 1961 and a high school graduate, Archer has past relevant employment as a data entry clerk, farmhand, lab technician/manager, and groundskeeper. Archer alleged the following conditions limited his ability to work:   back and leg pain, no sweat glands, hypothyroidism, neuropathy, low sex drive, anxiety and severe burns over 65% of his body. (Tr. 155). On appeal, Archer argues the ALJ mischaracterized and isolated medical evidence in evaluating his pain allegations, the ALJ assessed a residual functional capacity ("RFC") that is not supported by substantial evidence, and the ALJ's credibility findings are lacking.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the

record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id.* Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the

claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**ALJ'S DECISION**

At step one, the ALJ found Archer to have not engaged in substantial gainful activity since September 9, 2008. At step two, the ALJ found Archer to have the following severe impairments: "degenerative disc disease, history of extensive burns and resulting neuropathy, and hypothyroidism." (Tr. 14). At step three, the ALJ found that Archer's impairments, individually or in combination, did not equal the severity of the Listing of Impairments. (Tr. 17).

Before moving to step four, the ALJ determined that Archer had the residual functional capacity ("RFC") to perform:

> a range of "sedentary work," as that term is otherwise defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently. He can stand or walk a total of 2 hours and can sit for about 6 hours out of an 8-hour workday provided that he may alternate between sitting and standing postures every 20 to 30 minutes. He can only occasionally climb ramps and stairs, and would be unable to climb ladders, ropes, or scaffolding. He could occasionally stoop, crouch, and kneel, but could not perform any crawling. He could perform work not involving exposure to temperature extremes. He could perform work not involving operation of

vibrating tools or equipment.

(Tr. 18). At step four, the ALJ found that Archer was "capable of performing past relevant work as a data entry clerk" as this work did not require activities precluded by his RFC. (Tr. 23). Based on these findings and conclusions, the ALJ entered his order deciding that Archer had not been under a disability from September 9, 2008 through the date of his decision. (Tr. 23-24). Archer appeals.

**FAILURE TO MAKE ADEQUATE ASSESSMENT OF PAIN**

Archer contends the ALJ's credibility analysis does not follow the correct standards, relies on mischaracterizations of the medical evidence, and isolates the different medical evidence. It is the court's task to determine "whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014). The court looks at "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but . . . [i]t will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084.

Because the credibility findings "help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). "Credibility determinations are peculiarly the province of the finder of fact, and we will not

upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted). An ALJ's adverse credibility finding, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted). The Tenth Circuit has explained:

> [t]he framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). In evaluating a claimant's complaints of pain, the ALJ is to consider:

> [t]he levels of medication and their effectiveness, the extensiveness of the attempts (medical and nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly with the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation marks omitted).

While the record is to "demonstrate" that all the evidence was considered, "an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir.1996). When "the ALJ indicates he has considered all the evidence[,] our practice is to take the ALJ at his word."

*Wall v. Astrue*, 561 F.3d at 1070 (internal quotation marks and citation omitted). The ALJ's duties also include evaluating all medical opinions in the record, assigning weight to each opinion, and discussing the weight given to each. *See* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "Medical opinions are statements from . . . medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). There may not be a medical opinion if the physician only documents complaints and pain medications and then recommends treatment without also offering any opinion or judgment about the patient's abilities or limitations.

The ALJ's decision demonstrates he properly followed the standards for evaluating a claimant's complaints of disabling pain. He found "that the claimant's medically determinable impairments could possibly be expected to cause to some degree the symptoms alleged; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC assessment. (Tr. 18). The ALJ applied the credibility evaluation factors looking at the history of medical treatment for the burn injuries and the degenerative disc disease. (Tr. 19). Based on the objective medical evidence

of his physical impairments, including x-rays, tests and examination reports, the ALJ concluded that the plaintiff was "limited to a range of sedentary work." (Tr. 19). From this evidence, the ALJ highlighted that "no physician had prescribed an assistive device," that despite complaints of pain and numbness the patient still walked "normally," and that other test results of the leg, ankle strength and knee were normal. (Tr. 19). As for Archer's complaints of disabling pain, the ALJ found them only credible to the extent of the RFC finding. (Tr. 20). The ALJ cited and discussed the objective physical examination results, the pain medications prescribed, the strength findings, the daily activities reported, the work history, the inconsistencies between the complaints and the medical evidence, the medical opinions, and the third party reports. (Tr. 20-23). "After a thorough review of the evidence of record including Exhibits 1D-21E and 1F-33F, the claimant's allegations and testimony, forms completed at the request of the Social Security, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds the claimant capable of performing work consistent with the residual functional capacity established in this decision." (Tr. 23). The ALJ's decision sufficiently demonstrates that all the evidence was considered and that the required standards for evaluating credibility were followed.

   The court finds no error in the ALJ's characterization of Dr. Grundmeyer's records from the visit on April 3, 2009, that summarized the

radiographic studies as showing the "L4-L5 bond appears to be fusing well." (Tr. 19, 318). On the other hand, the MRI exam findings made by Dr. House on October 1, 2010, were:

> There did seem to be moderate broad based disk bulging at L4-5 causing bilateral neural foraminal narrowing. After contrast, there is some granulation tissue identified, but this does not change significantly. IMPRESSION: Postoperative changes involving the L4-5 disk space where there does seem to be posterior disk space bulging even with the prosthetic disk in place with neural foraminal narrowing bilaterally.

(Tr. 401). The ALJ characterized the MRI results as showing "typical postoperative changes involving the L4-5 disc space with neural foraminal narrowing bilaterally" (Tr. 19). The court finds nothing in the medical records or medical opinions to support the characterization of this being "typical postoperative changes." Instead, Dr. Badejo's reading of the MRI added, "[t]here is still some residual disc left posterior to the cage and the disc space there seems to be quite collapsed. The neural foramina were stenosed as well as the lateral recesses." (Tr. 418). The court, however, does not consider reversal and remand necessary for this unsupported characterization of typicality. The ALJ certainly recognized that changes had occurred and that they could be the source of his pain complaints, but even Dr. Badejo conceded that he was not certain about "the etiology of" Archer's symptoms. (Tr. 418). Nor does this mischaracterization involve a physician's opinion or judgment about Archer's abilities or limitations. Thus, the court believes the error here is harmless in that no reasonable administrative factfinder following all of the

10

required procedures would have resolved these factual matters differently.

The plaintiff does not show any error made or evidence ignored concerning the disability resulting from his burn injuries. The RFC limitations appear consistent with the original opinion of Dr. Jost and the subsequent medical record. The ALJ correctly summarized the objective physical examination findings made by the consulting examiner, Dr. Frederick Smith, on December 22, 2010. (Tr. 429). What the plaintiff quotes from Dr. Smith's report as the claimant "having trouble sitting and doing his work because of progressive increase in his back and leg symptoms" is what the claimant told Dr. Smith and not the physician's opinion or observation. (Tr. 429).

The ALJ's evaluation of Archer's work history is supported by substantial evidence. While the ALJ did not say that after the back surgery the plaintiff returned to part-time work, the ALJ's decision does report that he worked at "near or above the substantial gainful activity level through 2008." (Tr. 21). The evidence of record supports this statement, as well as, the ALJ's citation of the plaintiff's explanation given "in January 2011 that his job ended in 2008 "due to a company shutdown, not as a result of his alleged impairments." (Tr. 21).

The plaintiff next challenges the ALJ's evaluation of the weight given the different treating physicians' opinions. A "treating physician's opinion is given particular weight because of his unique perspective to the

11

medical evidence." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). A treating physician's opinion, however, is not entitled to controlling weight "'if it is not well-supported by medically acceptable clinical and laboratory techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). The plaintiff does not take issue with the ALJ identifying the three medical opinions of record as those given by Dr. Siemsen (agency consulting physician), Dr. Grundmeyer (treating physician), and Dr. Jost (treating physician). (Tr. 21-22). The evidence of record fully sustains the ALJ's evaluation of the treating physicians' opinions. Dr. Grundmeyer's work restrictions against a "labor job" were imposed "to allow for more time to heal." (Tr. 318). While observing that Archer "appears to be in a disabled stage with limited activity," Dr. Grundmeyer framed this comment by saying that Archer "may need an office setting or a sedentary work." (Tr. 318). The ALJ did not act inappropriately in inferring that Dr. Grundmeyer's opinion was entitled to "little weight . . . in any longitudinal sense" and was afforded "substantial weight" as it supported a sedentary work limitation. (Tr. 22). Nor can the court find any error with the ALJ's evaluation of Dr. Jost's opinion in 1985 regarding a level of disability as entitled to "little weight" for being remote and contradicted by the plaintiff's subsequent work history.

  The plaintiff argues that the SDM completed the RFC and that the

ALJ wrongly characterized Dr. Siemsen as having provided "specific reasons for his opinion about the claimant's residual functional capacity" and as having offered an opinion "grounded in the evidence of record, including careful consideration of the objective medical evidence." (Dk. 6, at p. 22; Tr. 22). In this case, Dr. Siemsen wrote that he "reviewed the evidence in the file and the RFC . . . and/or the assessment of 2/7/11 is affirmed as written." (Tr. 502). In light of Dr. Siemsen's statement, the ALJ properly evaluated the SDM's assessment as the opinion of Dr. Siemsen:

> The Commissioner relies on *Thongleuth* [*v. Astrue*, No. 10-1101-JWL, 2011 WL 1303374, at *12 (D. Kan. April 4, 2011)], in which the plaintiff agreed that at the reconsideration stage, the reviewing medical consultant affirmed and adopted the opinion of the SDM. 2011 WL 1303374, at * 11. In that case, the reviewing physician specifically stated that "the RFC and and/or assessment of 3–16–09 is affirmed as written." *Id.* at * 12. Based on this statement, and plaintiff's admission, *Thongleuth* found that the opinion of the SDM thereby became a medical opinion within the meaning of the Act and the regulations, and must be considered and weighed accordingly." *Id.* at *12; *see also Teneyck v. Astrue*, No. 11–1233–JWL, 2012 WL 1901285, at *6 (D.Kan. May 25, 2012); *Irwin v. Astrue*, No. 11–2157–SAC, 2012 WL 1416671, at *5 (D. Kan. April 24, 2012).

*Luu v. Astrue*, No. 11-2262-KHV, 2012 WL 5499438 at *4 (D. Kan. Nov. 13, 2012); *see Lacy v. Colvin*, No. 13-2376-SAC, 2014 WL 4059715 at *7 (D. Kan. Aug. 15, 2014). The ALJ did not err in characterizing Dr. Siemsen's opinion.

The plaintiff generally argues the ALJ's decision selectively relies on certain portions of the record and ignores the evidence establishing a disability based on pain. There is no dispute that the evidence of record is

13

replete with references to the plaintiff's pain complaints and his use of pain medications. Tenth Circuit precedent establishes that "'disability' requires more than the mere inability to work without pain." *Wall*, 561 F.3d at 1068 (internal quotation marks and citations omitted). As stated above, the court is satisfied that the ALJ followed the regulations and considered all evidence in making this disability determination. The court has reviewed the medical record and disagrees that the ALJ's decision is little more than an effort to "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Keyes-Zachary*, 695 F.3d at 1166 (internal quotation marks and citation omitted). The court finds an adequate evaluation of the medical-source evidence.

Additionally, the ALJ properly evaluated the plaintiff's activities of daily living that establish inconsistencies with the plaintiff's pain complaints. See SSR 96–7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). The ALJ highlighted records showing complaints of stiffness and pain with increased physical activity. The evidence of record sustains the ALJ's finding of the plaintiff having engaged in such physical labor such as cutting wood, working on a farm all day, and mowing lawns for others. (Tr. 20-21). The ALJ noted that a treating physician had recorded that he had seen Archer around town and that "he is able to be

14

functional and get what he needs to get done." (Tr. 21, 387). The ALJ also listed the plaintiff's daily activities which were inconsistent with his disabling pain allegations and concluded such activities were consistent with the RFC finding. (Tr. 21). The ALJ's decision reveals a thorough analysis of the evidence of record, and it is not this court's role to substitute its judgment for the ALJ's.

**FAILURE TO CONSIDER ALL EVIDENCE IN RFC ASSESSMENT**

Repeating most of the same arguments addressed above, the plaintiff here contends the ALJ's RFC finding that he can sit for 6 hours in a workday is not supported by substantial evidence. The court concludes that there is substantial evidence of record to sustain the ALJ's RFC finding for sitting. This evidence includes the physical examination reports, the opinion of Dr. Grundmeyer about sedentary level work, the plaintiff's work history, his daily living activities, and the opinion of Dr. Siemsen. The court disagrees with the plaintiff's reading of the ALJ's sit/stand option as necessarily meaning the plaintiff must stand more than two hours. The ALJ's sit/stand option is consistent with the plaintiff's own testimony. The court finds no error in the RFC assessment.

**FAILURE TO ASSESS TESTIMONY ON LIMITING EFFECTS OF PAIN**

The plaintiff here repeats his arguments on the sufficiency of the ALJ's credibility determinations of his testimony and his third-party statements. As already discussed above, the ALJ's decision shows the correct

legal standards were used in evaluating the plaintiff's pain testimony and the credibility determinations were based on specific reasons supported by substantial evidence of record. (Tr. 20-21). While the Tenth Circuit has discouraged use of boilerplate language for evaluating the claimant's credibility, it recognizes this practice to be "problematic only when it appears in the absence of a more thorough analysis." *Keyes–Zachary v. Astrue*, 695 F.3d at 1170 (10th Cir.2012) (internal quotation marks and citation omitted). The ALJ's analysis discussed and cited evidence for each of the following: physical examination results, reported physical activities, strength tests, inconsistencies with medical evidence, physician- observed physical activity, daily activities, participating in mission trips, and work history. (Tr. 20-21). The ALJ "clearly and affirmatively linked his adverse determination of Claimant's credibility to substantial record evidence . . . and our limited scope of review precludes us from reweighing the evidence or substituting our judgment for that of the agency." *Wall*, 561 F.3d at 1070 (internal quotation marks and citation omitted).

    The ALJ's decision expressly mentions the third-party statement of Ms. Archer and states that "due consideration" was given it. The ALJ explains that less weight was given it, because it was based on casual observation rather than objective medical testing. With regard to opinion testimony or statements from lay witnesses such as spouses, parents, friends, and

16

neighbors, the ALJ's decision must reflect that the opinion was considered, "but he need not specify the weight accorded to that opinion. Nonetheless, he may do so in explaining the rationale for his decision." *Cortes v. Colvin*, 2014 WL 1643493 (D. Kan. Apr. 23, 2014) (citations omitted). Social Security Ruling 06–03p (SSR 06–03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in a professional capacity. See Soc. Sec. Rul. 06–03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06–03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06–03p, 2006 WL 2329939, at *5–*6. "Proper reasons" for assigning little weight to such opinions can include that they are "based on casual observation and friendship." *Jackson v. Colvin*, 2013 WL 6440265 at *6 (D. Kan. Dec. 9, 2013). The ALJ here noted that the casual observations were outweighed by the "accumulated medical evidence. (Tr. 23). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d at 1144 (internal quotation marks and citation omitted). Substantial evidence supports the ALJ's credibility

determination on the third-party report.

IT IS THEREFORE ORDERED that the judgment be entered in accordance with sentence four of 42 U.S.C. § 405(g) affirming the Commissioner's decision.

Dated this 17th day of March, 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge